# IN THE UNITED STATES DISTRICT COURT
# FOR SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

| | |
|---|---|
| CENTRAL MUTUAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> EL TOREO, INC., HAROLD L. DIXON, REBECCA STEWART, and DANIEL WALKER, Individually and as Administrator of the Estate of ANITA JOY WALKER, and natural parent and guardian of minor REASON WALKER, <br><br> Defendants. | CIVIL ACTION NO. CV523-71 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Central Mutual Insurance Company ("Central") files this Complaint for Declaratory Judgment, showing the Court as follows:

### I.   Nature of Action

1. This is a declaratory judgment action under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. Central seeks a declaration as to the legal rights, and other legal relations, surrounding questions of controversy that presently exist over whether Central owes insurance coverage obligations to

any of the Defendants in connection with the claims asserted in the lawsuit now pending in the Superior Court of Lowndes County, Georgia, styled *Daniel C. Walker, Individually and as Administrator of the Estate of Anita Joy Walker, Reason D. Walker vs. El Paso of Valdosta, LLC, Maria A. Chavez, El Toreo, Inc., Rebecca S. Stewart, and Harold Dixon, Jr.,* Civil Action 2023CV1040 ("Underlying Lawsuit").

2. The Underlying Lawsuit is a personal injury lawsuit in which the Plaintiff claims at least $1,000,000.00 in damages as a result of a car wreck.

## II.   Parties, Jurisdiction and Venue

3. Central is a citizen of Pennsylvania and Ohio. It is a Pennsylvania corporation with its principal place of business in Van Wert, Ohio.

4. El Toreo, Inc. d/b/a El Toreo Mexican Restaurant ("El Toreo'), is a citizen of Georgia. It is a Georgia for-profit corporation with a principal place of business located at 1713 Gornto Rd, Valdosta, Lowndes County, GA, 31601.

5. El Toreo may be personally served through its registered agent, Antolin Quiroz at 1713 Gornto Road, Valdosta, Lowndes County, Georgia, 31601.

6. Harold Dixon ("Dixon"), an individual, is a Georgia citizen as he resides and is and domiciled in Georgia with a physical address of 4406

Windsong Circle, Valdosta, Lowndes County, Georgia 31602, and may be personally served at this location.

7. Rebecca Stewart ("Stewart") an individual, is a Georgia citizen as she resides and is and domiciled in Georgia with a physical address of 5355 Moss Oak Trail, Lake Park, Lowndes County, Georgia 31636, and may be personally served at this location.

8. Daniel Walker, individually, and as administrator of the estate of Anita Walker and natural parent and guardian of minor Reason Walker ("Walker'), an individual, is a Georgia citizen as he resides and is and domiciled in Georgia with a physical address of 4424 Wisteria Lane, Valdosta, Lowndes County, Georgia 31602, and may be personally served at this location.

9. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: 1) the Plaintiff is a citizen of Ohio and Pennsylvania and all of the Defendants are citizens of Georgia; and 2) The amount in controversy, exclusive of interest and costs, exceeds $75,000.

10. This Court also has jurisdiction pursuant to 28 U.S.C. § 2201, in that Central is seeking a declaration from this Court regarding the parties' rights and obligations with respect potential coverage under an insurance policy issued by Central.

3

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all of the Defendants reside in the United States District Court for the Southern District of Georgia.

### III. Facts Relevant to This Declaratory Judgment Action

#### A. The Underlying Motor Vehicle Accident

12. At all times material herein, Central was the general commercial liability insurance carrier for El Toreo, Policy No. CLP 8456756.

13. On June 25, 2021, at about 5:00 pm, Defendant Dixon, Defendant Stewart, and Anita Joy Walker ("Joy") were involved in a motor vehicle accident on North Valdosta Road, Lowndes County, Georgia (the "accident" or "occurrence").

14. Just before the accident, Defendant Dixon was exiting the parking lot of El Toreo's restaurant, where is was alleged to have been served alcoholic beverages.

15. Upon information and belief, Dixon was a regular patron of El Toreo and was known personally by its owner, Antolin Quiroz, and the waiter who served Dixon on the day of the accident, Italio Santana.

16. Joy was allegedly killed instantly in a chain collision after Stewart's vehicle (illustrated below in orange) made contact with Dixon's vehicle (blue).

4

The force of the impact sent Stewart's vehicle airborne, it flipped, and landed on top of Joy's vehicle (green), crushing its driver's side and Joy.

17. As the accident diagram from the police report shows, the accident occurred at or about 3270 North Valdosta Road. El Toreo's restaurant is located next door at 3260 North Valdosta Road, very close to the scene of the accident.



18. The Valdosta Fire Department and South Georgia Medical Center EMS arrived at the scene within a few minutes, where the police report states there was "fluid and debris on the roadway."

5

19. Upon information and belief, staff and patrons from El Toreo stepped outside and viewed the accident scene and rescue efforts by the police and fire departments.

20. Dixon was cited at the scene for DUI, and later arrested and additionally charged with Homicide by Vehicle and Failure to Yield the Right of Way.

21. Stewart was not charged at the scene, but was later arrested and charged with DUI, Homicide by Vehicle and Reckless Driving.

22. There were at least four news articles published about the accident in the following days and weeks.

23. On June 26, 2021, the *Valdosta Daily Times* and *Yahoo* reported, "Brooks woman dies in Valdosta wreck."

24. On June 28, 2021, *Valdosta Today* reported, "Fatal three vehicle accident in Valdosta."

25. On December 8, 2021, The *Georgia Gazette* published the booking photo of Defendant Stewart.

26. True and correct copies of the media reports are attached and marked hereto as composite Exhibit A.

27. On July 27, 2021, Counsel for Walker sent El Toreo a preservation

of evidence letter via certified mail requesting that El Toreo preserve all evidence related to Defendant Dixon and any individuals who were with him on the day of the June 25, 2021, accident. The letter states in part and at the outset:

> Please be advised by receipt of this correspondence that our firm represents Daniel Walker and Reason Walker, as surviving spouse and child of Anita Joy Walker, deceased, as a result of a motor vehicle collision that occurred on June 25. 2021, in Valdosta. Lowndes County. Georgia. Our investigation has revealed that Harold I.. Dixon, who was involved in the motor vehicle collision, was a patron of your facility on June 25, 2021.

A true and correct copy of the letter is attached and marked hereto as Exhibit B.

28. Despite El Torero's direct knowledge of the tragic accident, notice of a claim and request to preserve evidence from Walker's Counsel, and notoriety in the media, El Toreo did not provide Central with notice of the occurrence of its claim until almost a year later, on June 22, 2022.

### B. The Underlying Lawsuit

29. On June 22, 2023, Walker, on behalf of himself, Joy's estate, and minor child Reason, filed the Underlying Lawsuit against El Toreo, Dixon, Stewart, and the restaurant where Stewart was served, El Paso, and its proprietor, Linda Chavez. A true and correct copy of the complaint filed in the Underlying Lawsuit is attached as Exhibit C.

7

30. As set forth in Exhibit C, Walker alleges El Toreo negligently overserved Dixon alcoholic beverages and is therefore liable for the injuries he caused under Georgia's Dram Shop Act, O.C.G.A. 51-1-40. (Ex. D, Compl. ¶¶ 58 - 69.)

31. As set forth in Exhibit C, Walker alleges El Toreo negligently overserved Stewart alcoholic beverages and therefore is liable for the injuries she caused under Georgia Dram Shop Act, O.C.G.A. 51-1-40. (*Id*. at ¶¶ 58 - 69.)

32. Walker also makes claims for wrongful death, punitive damages, and attorney's fee against Dixon, and Stewart, and El Toreo. (*Id.* ¶¶ 80 - 93.) Walker seeks damages to recover special and exemplary damages and attorney's fees.

C. **El Toreo's Notice of the Accident to Central**

33. On June 25, 2021, El Toreo had knowledge of the occurrence between Dixon, Stewart, and Joy through Mr. Santana and other employees and patrons who either witnessed the accident or the emergency response.

34. On July 27, 2021, El Toreo received additional knowledge of the occurrence and claim between Dixon, Stewart, and Joy through a letter from Walker's Counsel demanding that El Toreo preserve any evidence concerning the accident. See Exhibit B.

35. On June 22, 2022, Counsel for Plaintiff notified Central of the claims against its Insured, El Toreo. This was the first time Central learned of the accident.

36. El Toreo, through its manager/owner Mr. Quiroz, was aware of the accident at the time it happened. Mr. Quiroz also received the July 27, 2021, preservation of evidence demand from Walker's attorney around the time it was sent.

37. Mr. Quiroz did not inform Central of the accident when he had notice of the accident, notice of the claim, or received the preservation of evidence letter.

38. On June 29, 2022, Central sent El Toreo a reservation of rights letter in which Central reserved its right to deny coverage under insurance policy number CPL 8456756. A true and correct copy of the letter is attached hereto as Exhibit D.

39. Central is currently defending El Toreo in the Underlying Lawsuit pursuant to a reservation of rights.

### D. The Central Insurance Policy

40. Central issued insurance policy no. CPL 8456756 to El Toreo for the policy period of 9/7/2020 to 9/7/2021 (the Policy). A true, accurate, and

authentic copy of the Policy is attached to this complaint as Exhibit E.

41.     The Policy contains several provisions, exclusions and conditions that control the question of whether Central owes insurance coverage obligations to any of the Defendants in connection with the claims asserted in the Underlying Lawsuit.

42.     The Policy includes a Liquor Liability Coverage Form that provides the following coverage:

> **LIQUOR LIABILITY COVERAGE FORM   CG0033 04 13**
>
> **SECTION I – LIQUOR LIABILITY COVERAGE**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result.
>
> **d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:
>
> (1) Reports all, or any part, of the "injury" to us or any other insurer;
> (2) Receives a written or verbal demand or claim for damages because of the "injury"; or
> (3) Becomes aware by any other means that "injury" has occurred or has begun to occur

43. Section IV of the Liquor Liability Coverage Form provides, in pertinent part, the following conditions precedent on El Toreo in the event of an injury, claim, or suit:

**SECTION IV – LIQUOR LIABILITY CONDITIONS**

**2. Duties In The Event Of Injury, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "injury" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any "injury".

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent

44. These conditions are conditions precedent under the Policy. The conditions required El Toreo to notify Central of any occurrence, claim or injury "as soon as practical" and "immediately" forward to Central any demands, notices or legal papers in connection with any claim.

11

45. The Liquor Liability Coverage Form contains the following Condition, verifying that all notice conditions are conditions precedent:

> **3. Legal Action Against Us**
> No person or organization has a right under this Coverage Part:
> a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
> b. To sue us on this Coverage Part unless all of its terms have been fully complied with.
>
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

46. El Toreo did not notify Central until almost a year after the accident and only did so when prompted by Central after it learned of Walker's claims independently.

47. The foregoing Sections are governed by the following Definitions which apply to the accident:

> **SECTION V – DEFINITIONS**
>
> 5. "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.
>
> 8. "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:
>
> a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

## Count I
## Lack of Coverage Based on Failure of Conditions Precedent

48. Central seeks a declaration of rights that there is no coverage under the Policy for the claims asserted in the Underlying Lawsuit.

49. The Policy does not cover any of the claims made in the Underlying Lawsuit and will not cover any damages awarded therein, due to the failures of the Insured to comply with the Policy's terms and conditions with respect to the occurrence detailed in the Underlying Lawsuit.

50. El Toreo violated these terms and conditions because it was aware of the June 25, 2021 accident for nearly a year before it notified Central about the occurrence.

51. El Toreo violated these terms and conditions because it was aware of the claims arising out of the June 25, 2021 accident for nearly a year before it notified Central about the claim.

52. El Toreo violated the terms and conditions of the Policy by failing to forward the July 27, 2021, preservation of evidence demand from Walker's attorney to Central and reporting its knowledge of the occurrence with Central.

53. Central is entitled to a declaration that it owes no duty to defend or duty to indemnify in connection with the Underlying Lawsuit.

WHEREFORE, Plaintiff Central Mutual Insurance Company prays:

(a) That each and every Defendant be required to respond to the allegations set forth in this *Complaint for Declaratory Judgment*;

(b) That this Court declare that Central has no duty to cover or indemnify any of the Defendants for any of Walker's claims, the Underlying Lawsuit (and any appeals in that lawsuit), or any judgments or awards in that lawsuit;

(c) For such other relief as this Court deems just and proper.

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing **Complaint for Declaratory Judgment** has been prepared in 14-point size Times New Roman font, in accordance with L.R. 5.1.

Date: July 20, 2023.

Respectfully submitted,

**Bovis, Kyle, Burch & Medlin, LLC**

200 Ashford Center North
Suite 500
Atlanta, Georgia 30338-2668
Tel: (770) 391-9100
Fax: (770) 668-0878

/s/ Kim M. Jackson
Ga. State Bar No. 387420
/s/ Jonathan M. Woods
Ga. State Bar No. 101808

kjackson@boviskyle.com  *Counsel for Plaintiff Central Mutual*
jwoods@boviskyle.com  *Insurance Company*